# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| WALL-TECH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:20-cv-00048 |
| | ) | |
| BES DESIGN/BUILD, LLC and AEGIS | ) | JUDGE CAMPBELL |
| SECURITY INSURANCE COMPANY, | ) | MAGISTRATE JUDGE FRENSLEY |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Defendant BES Design/Build, LLC's ("BES") Motion to Dismiss Verified Complaint, or in the Alternative, to Stay the Action Pending Arbitration. (Doc. No. 25). Plaintiff filed a Response in Opposition (Doc. No 29) and BES filed a Reply (Doc. No. 31). For the reasons discussed below, Defendant's Motion to Dismiss will be **GRANTED** in part and **DENIED** in part.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2017, BES entered into a contract with the United States Department of Veterans Affairs (the "VA") to serve as the general contractor for a construction project to make improvements to a veterans hospital known as the VAMC Tennessee Valley Healthcare Facility Nashville Campus ("the Project"). (Doc. No. 1 ¶¶ 6, 7). BES obtained a payment bond (the "Bond") from the Surety Defendant AEGIS Security Insurance Company ("AEGIS"), wherein BES and AEGIS guaranteed BES would pay promptly all subcontractors furnishing labor, materials, and services pursuant to a direct subcontract with BES. (Doc. No. 1 ¶¶ 8, 9).

On or about June 25, 2018, BES and Wall-Tech entered into a written subcontract agreement (the "Subcontract"), under which BES agreed to pay Wall-Tech $59,840.00 in exchange

for metal framing and drywall work for the Project. (Doc. No. 1 ¶¶ 10-12). The Subcontract included an arbitration agreement:

> 14.1 **AGREEMENT TO ARBITRATE**. All claims, disputes and matters in question arising out of, or relating to, the Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, and the claims described in Paragraph 14.2, shall be decided by binding arbitration in accordance with the Contraction industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. Notwithstanding other provisions in the Agreement, this agreement to arbitrate shall be governed by the Federal Arbitration Act.
>
> 14.2 **EXCEPTIONS**. The agreement to arbitrate shall not apply to any claim:
>> (a) of contribution or indemnity asserted by one party to this Agreement against the other party and arising out of an action brought in a state or federal court or in arbitration by a person who is under no obligation to arbitrate the subject matter of such action with either of the parties hereto or does not consent to such arbitration; or
>> (b) asserted by the Subcontractor against the Contractor if the Contractor asserts said claim, either in whole or part against the Owner, or asserted by the Owner against the Contractor, when the contract between the Contractor and Owner does not provide for binding arbitration, or does so provide but the two arbitration proceedings are not consolidated, or the Contractor and Owner have not subsequently agreed to arbitrate said claim. In either case the parties hereto shall notify each other before or after demand for arbitration is made.
>
> In any dispute arising over the application of this Paragraph 14.2, the question of arbitrability shall be decided by the appropriate court and not be arbitration.

(Doc. No. 1-3 at PageID # 33). The Subcontract price rose to $162,845.00 during construction because BES and Wall-Tech agreed to expand the scope of services required of Wall-Tech under the Subcontract. (Doc. No. 1 ¶ 14). Wall-Tech completed all the work under the Subcontract on January 17, 2019, but did not receive any payments from BES. (Doc. No. 1 ¶¶ 15-17).

On July 31, 2019, Wall-Tech received notice from BES that the VA terminated its contract with BES and that BES was likewise terminating the Subcontract. (Doc. No. 1 ¶ 18). On November 25, 2019, Wall-Tech sent a Notice of Nonpayment and claim against the Bond to BES and AEGIS (the "Claim"), notifying them of BES's failure to make payment and demanding that they honor the terms of the Subcontract and the Bond and make payment within 10 days. (Doc. No. 1 ¶ 19). AEGIS subsequently denied the Claim. (Doc. No. 1 ¶¶ 21-25).

On January 16, 2020, Plaintiff filed a Verified Complaint alleging a claim for breach of contract against BES and claims of nonpayment under the Miller Act, 40 U.S.C. § 3131, *et seq.*, against BES and AEGIS in connection with the Project. (Doc. No. 1). On August 24, 2020, BES filed the pending motion to dismiss seeking to dismiss the Verified Complaint or, in the alternative, staying the action pending arbitration. (Doc. No. 25).

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") "expresses a strong public policy favoring arbitration in a broad range of disputes." *Cooper v. MRM, Inc.*, 367 F.3d 493, 498 (6th Cir. 2004). It provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a valid arbitration agreement governs a claim, courts must compel arbitration. *Id*. § 3. While the courts must respect "the liberal federal policy favoring arbitration agreements ... arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (internal citation and quotation omitted). Because arbitration agreements are fundamentally contracts, the enforceability of a purported agreement to arbitrate is evaluated according to applicable state contract law. *Id*.

When considering a motion to dismiss and compel arbitration under the FAA a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)) (internal citations omitted). In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014).

### III. ANALYSIS

#### A. Whether the parties agreed to arbitrate

Wall-Tech does not dispute that it entered into an arbitration agreement with BES or challenge the validity of that agreement. Wall-Tech asserts that it did not agree to arbitrate with AEGIS and notes that the Bond does not contain an agreement to arbitrate or incorporate the Subcontract. (Doc. No. 29 at 9). AEGIS did not file anything in response to BES's motion to compel arbitration. Nor does BES appear to have advanced any argument concerning whether Wall-Tech and AEGIS agreed to arbitrate. Given the absence of evidence or argument that Wall-Tech and AEGIS have an agreement to arbitrate, the Court finds that Wall-Tech's claims against AEGIS are not subject to arbitration.

#### B. Scope of the arbitration agreement

Here, the arbitration agreement in the Subcontract states that:

4

> All claims, disputes and matters in question arising out of, or relating to, the Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, and the claims described in Paragraph 14.2, shall be decided by binding arbitration…

(Doc. No. 1-3 at PageID # 33). It is undisputed that Wall-Tech's claims against BES in the present case arise out of and relate to the Subcontract and the alleged breach thereof. However, Wall-Tech argues that Section 14.2 excepts its claims against BES from the arbitration agreement. (Doc. No. 29 at 4-8). Section 14.2 states, in pertinent part, that:

> The agreement to arbitrate shall not apply to any claim… asserted by the Subcontractor against the Contractor if the Contractor asserts said claim, either in whole or part against the Owner, … when the contract between the Contractor and Owner does not provide for binding arbitration, or does so provide but the two arbitration proceedings are not consolidated, or the Contractor and Owner have not subsequently agreed to arbitrate said claim.
>
> In any dispute arising over the application of this Paragraph 14.2, the question of arbitrability shall be decided by the appropriate court and not be arbitration.

(Doc. No. 1-3 at PageID # 33). Wall-Tech argues that its claims against BES are exempt from the arbitration requirement by Section 14.2 because BES is asserting a claim against the VA for the same amounts sought by Wall-Tech from BES. (Doc. No. 29 at 8). In support, counsel for Wall-Tech submitted an affidavit stating he had received communications from an attorney on behalf of BES advising that the VA had not made payment in full to BES, including the amounts that were due Wall-Tech, and that the VA and BES were negotiating to close out the Project. (Doc. No. 29-3 ¶¶ 5-6). In its reply, BES argues that Wall-Tech's claims are not exempt from the arbitration provision in the Subcontract because Section 14.2 pertains to "claim[s]" asserted by the contractor against the owner and BES has not asserted any formal claim against the VA. (Doc. No. 31 at 3-

5

4). BES notes that Wall-Tech does not discuss or reference any claim by BES but rather presents evidence of disputes and discussions pertaining to dispute resolution. (Doc. No. 31 at 3-4).

The Court need not determine whether the negotiations between BES and the VA constitute a "claim" because even if they did the exception from arbitration provided in Section 14.2 would still not apply unless: (1) the contract between BES and the VA does not provide for binding arbitration; (2) the contract between BES and the VA does provide for binding arbitration but the two arbitration proceedings are not consolidated; or (3) BES and the VA have not subsequently agreed to arbitrate BES's claim against the VA. (*See* Section 14.2). Neither party has produced evidence or raised arguments concerning whether the contract between BES and the VA provided for binding arbitration or whether BES and the VA have otherwise made an agreement about whether to arbitrate BES's claim against the VA. Accordingly, the Court is unable to find that Wall-Tech's claims against BES fall within Section 14.2's exception from arbitration.

## C. Whether Congress intended Miller Act Claims to be nonarbitrable

In deciding whether to compel arbitration of a federal statutory claim, a court considers whether the statutory claim is generally subject to compulsory arbitration. *Floss v. Ryan Family Steak House*, 211 F.3d 306, 311 (6th Cir. 2000). "[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) and *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). In the present case, Wall-Tech does not argue that Congress intended to preclude arbitration of Miller Act claims. Instead, Wall-Tech asserts that the Court should deny BES's motion to compel arbitration because Wall-Tech complied with the Miller Act's requirement of filing a civil action in United States District Court

for the district in which the Project is located. (Doc. No. 29 at 4-5). That a plaintiff's claim is grounded in a statutory right does not necessarily foreclose the arbitrability of the claim. *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 923 (M.D. Tenn. 2003) (citing *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). The Court is not persuaded that Congress intended to preclude the arbitration of Miller Act claims.

**D. Whether to stay proceedings pending arbitration**

Wall-Tech requests that the Court stay the present case if arbitration is ordered. (*See* Doc. No. 29 at 9-10). Because the FAA provides that a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, the Court will stay the case pending arbitration between the BES and Wall-Tech. *See also Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017) (observing that a stay in lieu of dismissal is appropriate where party requests it).

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE